# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCUS HARRISON,<br><br>    Plaintiff,<br><br>v.<br><br>NIEHUS, et al.,<br><br>    Defendants. | Case No. 1:17-cv-01120-LJO-BAM (PC)<br><br>SCREENING ORDER GRANTING LEAVE TO FILE AN AMENDED COMPLAINT<br><br>[ECF No. 1]<br><br>**THIRTY-DAY DEADLINE** |

Plaintiff Marcus Harrison is a state proceeding *pro se* in this civil rights action pursuant to 42 U.S.C. § 1983.

Plaintiff's complaint is currently before the Court for screening. (ECF No. 1.)

**I.    Screening Requirement and Standard**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b); 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

## II. Plaintiff's Allegations

Plaintiff is currently housed at California Medical Facility in Vacaville, California. Plaintiff alleges that the events at issue took place at Corcoran State Prison ("Corcoran"). Plaintiff names the following defendants, each of whom are employed at Corcoran: (1) Institutional Gang Investigator S. Niehus; (2) Institutional Gang Investigator J. Pierce; (3) Investigative Services Unit R. Broomfield; (4) Chief Deputy Warden M. V. Sexton; (5) Associate Warden J. Vanderpoel; and (6) Officer Beam, 4B SHU Law Library.

Plaintiff alleges as follows: On February 3, 2015, Plaintiff arrived at Corcoran's Security Housing Unit ("SHU") via a transfer. Plaintiff handed Officer Beam a CDCR Form 22 dated February 3, 2015, and some legal documents for his case, *Harrison v. S. Burris*, Case No. 13-2506-JST, which had a February 6, 2015 deadline. Plaintiff requested access to the SHU law library, which he was not accorded. Consequently, Plaintiff's legal case was dismissed.

On March 11, 2015, Plaintiff was issued his personal legal property. Upon inspection, Plaintiff informed Officer G. Robles that several legal documents and materials were missing. Officer Robles informed Plaintiff that Corcoran's Institutional Gang Investigation Unit ("IGI Unit") had searched Plaintiff's property and confiscated materials.

On March 15, 2015, Plaintiff sent a CDCR Form 22 dated March 15, 2015 to Corcoran's IGI Unit, addressed to Officer Niehus, wherein Plaintiff inquired about the confiscation of his political writings, pamphlets, reference notes, newspaper clippings, etc. On March 17, 2015,

Officer Niehus responded by saying, "On February 18, 2015, Corcoran I.G.I. Unit searched your property located in 4B SHU Property Room. Refer to attached property receipt. On February 18, 2015, a copy of the attached search receipt was forwarded to you via institutional mail. All items confiscated will be documented @ a future date." (Compl. 11.)

As a result of the confiscation of Plaintiff's legal exhibits, Plaintiff suffered the following harm: (1) *Harrison v. S. Burris*, Case No. 13-2506-JST, was dismissed on March 31, 2015; and (2) *Harrison v. D. Milligan*, Case No. 14-15022, was dismissed on May 19, 2015. As indicated by Officer Niehus, all of Corcoran's IGI Unit staff members were complicit in confiscating Plaintiff's exhibits. IGI Unit Sergeant J. Pierce and Investigative Services Unit ("ISU") Captain R. Broomfield signed off on 602 appeal No. CSPC-8-05-02088, wherein they state:

> In February 2015, your personal property, which was stored in the Corcoran SHU property room, was searched by members of the Corcoran Institutional Gang Investigations (I.G.I.) Unit. During the search, contraband and suspected contraband was confiscated and you were issued a property removal receipt.

(Compl. 13.) Chief Deputy Warden Sexton and Associate Warden Vanderpoel were made aware of the officers confiscating Plaintiff's property, which obstructed Plaintiff's access to the courts.

Per a second level review in 602 appeal log no. CSPC-5-15-02088, Plaintiff received an itemized list of his confiscated items, including the following: (1) newspaper clippings; (2) postcard image of George Lester Jackson; (3) 23 page document entitled, "Resisting the Subversive Extremes of Political Persecution"; (4) 21 page political dictionary; (5) 3 page political writing entitled, "Thoughts on the Historical Materialism of the Prison Movement"; (6) 8 page political writing about the anatomy; (7) 24 pages dealing with the W.L. Nolen Mentorship program; (8) 47 page manuscript entitled, "Manifesto of Political Disorder"; (9) 41 photocopied images of George Jackson Lives; (10) 10 pages of handwritten reference notes; (11) 14 photocopied pages of newspaper clippings; (12) 3 page document discussing New Afrikan Revolutionary Nationalism; (13) 2 page document of martial art movements; (14) copies of a pamphlet entitled, "George Jackson Lives." These items were not contraband, as defendants have alleged.

///

Plaintiff asserts a claim for violation of his right to access the courts, and a violation of his rights to freedom of speech, expression, and association under the First Amendment. Plaintiff seeks compensatory and punitive damages, declaratory relief, the return of his confiscated property, the appointment of counsel, and any other relief deemed just and appropriate.

**III. Discussion**

**A. Supervisory Liability**

Supervisory personnel may not be held liable under section 1983 for the actions of subordinate employees based on respondeat superior, or vicarious liability. *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013); *accord Lemire v. California Dep't of Corr. and Rehab.*, 726 F.3d 1062, 1074-75 (9th Cir. 2013); *Lacey v. Maricopa County*, 693 F.3d 896, 915-16 (9th Cir. 2012) (*en banc*). "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Crowley*, 734 F.3d at 977 (citing *Snow v. McDaniel*, 681 F.3d 978, 989 (9th Cir. 2012)) (internal quotation marks omitted); *accord Lemire*, 726 F.3d at 1074-75; *Lacey*, 693 F.3d at 915-16. "Under the latter theory, supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation." *Crowley*, 734 F.3d at 977 (citing *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)) (internal quotation marks omitted).

Plaintiff has not alleged that Chief Deputy Warden Sexton or Associate Warden Vanderpoel were personally involved in a violation of his rights. Nor has Plaintiff made allegations regarding a policy, as explained here. Plaintiff cannot bring any claim based solely on a prison official's supervisory role.

**B. Access to the Courts**

"[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977)); *Phillips v. Hust*, 588 F.3d 652, 655 (9th Cir. 2009) (same). The

right of access to the courts, however, is limited to non-frivolous direct criminal appeals, habeas corpus proceedings, and § 1983 actions. *Lewis v. Casey*, 518 U.S. 343, 354–55 (1996).

In order to frame a claim of a denial of the right to access the courts, a prisoner must allege facts showing that he has suffered "actual injury," a jurisdictional requirement derived from the standing doctrine. *Lewis*, 518 U.S. at 349. An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Lewis*, 518 U.S. at 348 (citation and internal quotations omitted); *see also Alvarez v. Hill*, 518 F.3d 1152, 1155 n. 1 (9th Cir. 2008) (noting that "[f]ailure to show that a 'non-frivolous legal claim had been frustrated' is fatal" to a claim for denial of access to legal materials) (quoting *Lewis*, 518 U.S. at 353 & 353 n. 4).

The provision of an adequate law library (or legal assistance) is not an end in itself, "but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Lewis*, 518 U.S. at 351 (quoting *Bounds*, 430 U.S. at 825). Indeed, there is no "abstract, freestanding right to a law library or legal assistance." *Id.*, at 351. Therefore, a prisoner's complaint will not survive screening if it simply alleges facts showing "that his prison's law library or legal assistance program is subpar in some theoretical sense." *Id*.

Claims for denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a meritorious suit that cannot now be tried (backward-looking claim). *Christopher v. Harbury*, 536 U.S. 403, 412-15 (2002). For backward-looking claims, plaintiff "must show: 1) the loss of a 'nonfrivolous' or 'arguable' underlying claim; 2) the official acts frustrating the litigation; and 3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit." *Phillips v. Hust*, 477 F.3d 1070, 1076 (9th Cir. 2007) (citing *Christopher*, 536 U.S. at 413-14).

A prisoner must allege the denial of the necessary tools to litigate a non-frivolous claim attacking a conviction, sentence, or conditions of confinement. *Christopher*, 536 U.S. at 415; *Lewis*, 518 U.S. at 353 & n.3. Plaintiff need not show that he would have been successful on the merits of his claims, but only that they were not frivolous. *Allen v. Sakai*, 48 F.3d 1082, 1085 &

n.12 (9th Cir. 1994). A claim "is frivolous where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). To properly plead a denial of access to the courts claim, "the complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued, and a like plain statement should describe any remedy available under the access claim and presently unique to it." *Christopher*, 536 U.S. at 417-18 (footnote omitted).

In this case, Plaintiff has not met the standards set forth above. He alleges that his cases were dismissed for various reasons, including inadequate law library access and the confiscation of certain materials, and thus appears to assert a backwards-looking claim. He has not shown an actual injury as discussed above, nor shown a qualified, non-frivolous claim.

**C. Speech, Expression, and Association**

The First Amendment to the United States Constitution, which is applicable to the states through the Fourteenth Amendment, provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, . . . or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I; *see Everson v. Board of Education*, 330 U.S. 1, 15 (1947). Prisoners "clearly retain protections afforded by the First Amendment...." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted), *superseded by statute on other grounds*, 42 U.S.C. §§ 2000cc, *et seq*.

As a consequence of incarceration, however, a prisoner's First Amendment rights are necessarily "more limited in scope than the constitutional rights held by individuals in society at large." *Shaw v. Murphy*, 532 U.S. 223, 229 (2001). Thus, an inmate retains only "those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974) ("[L]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.") (citations and internal quotation marks omitted); *Bell v. Wolfish*, 441 U.S. 520, 545 (1979); *Prison Legal News v. Cook*, 238 F.3d 1145, 1149 (9th Cir. 2001).

Prisoners specifically retain limited First Amendment rights to free expression and association. *See Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989); *Shaw*, 532 U.S. at 229. A prison official's limitation on inmate expression/assembly does not violate the First Amendment if the particular restriction "is reasonably related to legitimate penological interests" and "operated in a neutral fashion" (*i.e.*, was applied "without regard to the content of the expression"), and the inmate was not deprived of all means of expression. *Turner*, 482 U.S. at 89 (citations omitted); *Valdez v. Rosenbaum*, 302 F.3d 1039, 1048 (9th Cir. 2002) (citations omitted), *cert. denied*, 538 U.S. 1047 (2003). A plaintiff/inmate has the burden to show that a government restriction on expression/assembly is not reasonable. *See Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) (citations omitted).

*Turner v. Safely*, 482 U.S. 78 (1987), sets forth the general test to determine whether a prison regulation that infringes on constitutional rights may be enforced. "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. Four factors are to be considered when determining the reasonableness of a prison rule: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate government interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates and on the allocation of prison resources generally"; and (4) the "absence of ready alternatives," or, in other words, whether the rule at issue is an "exaggerated response to prison concerns." *Id*. at 89-90.

Plaintiff has not met the standards set forth here. Although he has alleged certain property was confiscated as contraband, he has not pleaded facts showing the applicable government restriction or limitation, or the lack of a legitimate penological interest.

///

///

///

///

### D. Declaratory Relief

In addition to damages, Plaintiff seeks declaratory relief, but because his claims for damages necessarily entail a determination whether his rights were violated, his separate request for declaratory relief is subsumed by those claims. *Rhodes v. Robinson*, 408 F.3d 559, 566 n. 8 (9th Cir. 2005). Therefore, Plaintiff's claim for declaratory relief should be dismissed.

### E. Property

Plaintiff appears to seek to assert a claim based on the deprivation of personal property. Plaintiff has no cause of action under 42 U.S.C. § 1983 for an unauthorized deprivation of his personal property, whether intentional or negligent, by a state employee, since a meaningful state post-deprivation remedy for the loss is available. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). California law provides an adequate post-deprivation remedy for any property deprivations. *Barnett v. Centoni*, 31 F.3d 813, 816-817 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810-895).

### F. Exhaustion of Administrative Remedies

A prisoner may bring no § 1983 action until he has exhausted such administrative remedies as are available to him. 42 U.S.C. § 1997e(a) (also known as the Prison Litigation Reform Act ("PLRA") ). Proper exhaustion is mandatory, *Booth v. Churner*, 532 U.S. 731, 741 (2001), and "demands compliance with an agency's deadlines and other critical procedural rules[,]" *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).

Here, Plaintiff alleges that his 602 appeal was cancelled at the third level, and he filed a second level appeal on the cancellation. It is not clear whether he fully exhausted all claims. Plaintiff is required to exhaust each claim through the third level of review before he files a claim in federal court.

### G. Linkage

Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law. *Nurre v. Whitehead*, 580 F.3d 1087, 1092 (9th Cir 2009); *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere

conferred." *Crowley v. Nevada ex rel. Nevada Sec'y of State*, 678 F.3d 730, 734 (9th Cir. 2012) (citing *Graham v. Connor*, 490 U.S. 386, 393-94 (1989)) (internal quotation marks omitted). To state a claim, Plaintiff must allege facts demonstrating the existence of a link, or causal connection, between each defendant's actions or omissions and a violation of his federal rights. *Lemire v. California Dep't of Corr. and Rehab.*, 726 F.3d 1062, 1074-75 (9th Cir. 2013); *Starr v. Baca*, 652 F.3d 1202, 1205-08 (9th Cir. 2011).

Plaintiff fails to link each individual Defendant to an affirmative action or omission giving rise to an alleged constitutional violation. There are no allegations of any violations by Officer Beam.

**H. Appointment of Counsel**

Plaintiff does not have a constitutional right to appointed counsel in this action, *Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir. 1997), *rev'd in part on other grounds*, 154 F.3d 952, 954 n.1 (9th Cir. 1998), and the Court cannot require an attorney to represent Plaintiff pursuant to 28 U.S.C. §1915(e)(1), *Mallard v. U.S. Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296, 298 (1989). However, in certain exceptional circumstances the court may request the voluntary assistance of counsel pursuant to section 1915(e)(1). *Rand*, 113 F.3d at 1525. Without a reasonable method of securing and compensating counsel, the court will seek volunteer counsel only in the most serious and exceptional cases. In determining whether "exceptional circumstances exist, a district court must evaluate both the likelihood of success on the merits [and] the ability of the [plaintiff] to articulate his claims pro se in light of the complexity of the legal issues involved." *Id*. (internal quotation marks and citations omitted).

In this case, the Court does not find the required exceptional circumstances for the appointment of counsel. Even if it is assumed that Plaintiff is not well versed in the law and that he has made serious allegations which, if proved, would entitle him to relief, his case is not exceptional. The Court is faced with similar cases filed by pro se litigants almost daily. Furthermore, at this stage in the proceedings, the Court cannot make a determination that Plaintiff is likely to succeed on the merits. As discussed in this order, the Court has not yet found that Plaintiff proceeds upon a cognizable claim.

For these reasons, Plaintiff's request for the appointment of counsel will be denied, without prejudice.

### IV. Conclusion

As discussed above, the Court finds deficiencies in Plaintiff's complaint and that he has not stated a cognizable claim for relief. Plaintiff will be granted leave to amend to attempt to cure the identified deficiencies, to the extent he is able to do so in good faith. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, *Iqbal*, 556 U.S. at 678-79, 129 S. Ct. at 1948-49. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (citations omitted).

Additionally, Plaintiff may not change the nature of this suit by adding new, unrelated claims in his first amended complaint. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Finally, Plaintiff is advised that an amended complaint supersedes the original complaint. *Lacey v. Maricopa Cty.*, 693 F.3d 896, 927 (9th Cir. 2012). Therefore, Plaintiff's amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's request for the appointment of counsel is denied, without prejudice;

2. The Clerk's Office shall send Plaintiff a complaint form;

3. Within **thirty (30) days** from the date of service of this order, Plaintiff shall file an amended complaint curing the deficiencies identified by the Court in this order, or file a notice of voluntary dismissal;

4. Plaintiff's amended complaint is limited to twenty-five (25) pages; and

///

///

5. If Plaintiff fails to file an amended complaint in compliance with this order, the Court will recommend dismissal of this action, with prejudice, consistent with the reasons discussed in this order.

IT IS SO ORDERED.

Dated: **April 2, 2018**  /s/ Barbara A. McAuliffe
UNITED STATES MAGISTRATE JUDGE

11