# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCUS HARRISON,<br><br>                 Plaintiff,<br><br>     v.<br><br>NIEHUS, et al.,<br><br>                 Defendants. | Case No. 1:17-cv-01120-LJO-BAM (PC)<br><br>SCREENING ORDER GRANTING LEAVE TO FILE AN AMENDED COMPLAINT<br><br>[ECF No. 10]<br><br>**THIRTY-DAY DEADLINE** |

Plaintiff Marcus Harrison is a state proceeding *pro se* in this civil rights action pursuant to 42 U.S.C. § 1983. The Court screened Plaintiff's complaint and granted leave to amend. Plaintiff's first amended complaint is currently before the Court for screening. (ECF No. 10.)

## I.    Screening Requirement and Standard

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b); 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required

1

to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

## II. Plaintiff's Allegations

Plaintiff is currently housed at California Medical Facility in Vacaville, California. Plaintiff alleges that the events at issue took place at Corcoran State Prison ("Corcoran"). Plaintiff names the following defendants, each of whom are employed at Corcoran: (1) Institutional Gang Investigator S. Niehus; (2) Institutional Gang Investigator J. Pierce; (3) Investigative Services Unit R. Broomfield; (4) Chief Deputy Warden M. V. Sexton; and (5) Associate Warden J. Vanderpoel.[1]

Plaintiff alleges as follows: On February 3, 2015, Plaintiff arrived at Corcoran's Security Housing Unit ("SHU") via a transfer. On March 11, 2015, Plaintiff was issued personal legal property from Officer Robles, but Plaintiff noted that several "legal document materials" were missing.[2] Officer Robles informed Plaintiff that Corcoran's Institutional Gang Investigation Unit ("IGI Unit") had searched Plaintiff's property and confiscated materials.

On March 15, 2015, Plaintiff sent a CDCR Form 22 dated March 15, 2015 to Corcoran's IGI Unit, addressed to Officer Niehus, wherein Plaintiff inquired about the confiscation of his political writings, pamphlets, reference notes, newspaper clippings, etc. On March 17, 2015, Officer Niehus responded by saying, "On February 18, 2015, Corcoran I.G.I. Unit searched your

---

[1] Plaintiff does not identify Associate Warden J. Vanderpoel in the list of Defendants, but Associate Warden J. Vanderpoel is included in the caption of the case. The Court will evaluate the allegations against Associate Warden J. Vanderpoel.

[2] In his allegations, Plaintiff refers the Court to "attached" exhibits, but no exhibits were attached to the amended complaint. Plaintiff will be granted leave to amend. Should he wish the Court to consider exhibits, he should attach them to any amended complaint and allege what he contends they establish about his claims.

1  property located in 4B SHU Property Room. Refer to attached property receipt. On February 18,

2  2015, a copy of the attached search receipt was forwarded to you via institutional mail. All items

3  confiscated will be documented @ a future date." (FAC ¶4.) All Institution Gang Investigative Unit

4  staff were complicit in confiscating Plaintiff's legal exhibits. Plaintiff received a memorandum

5  dated May 4, 2015 from ISU Captain R. Broomfield and Sgt J. Pierce that they were directly

6  involved in confiscating Plaintiff's legal exhibits.  A second memo dated March 26, 2015 said that

7  Warden J. Vanderpoel was directly involved in the confiscation.  A third memo dated June 30, 2015

8  said that Deputy Warden M. Sexton was directly involved in the confiscation.

9       Plaintiff alleges that Defendants M. Sexton and J. Vanderpoel had enacted policies and

10  enforced policies which enabled Plaintiff's constitutional rights of access to the court to be violated.

11  Plaintiff was told, falsely, that his legal materials were confiscated because they were gang related

12  contraband.  Plaintiff alleges that confiscation of his legal property did not advance any penological

13  interest because these same exhibits were reviewed by CDCR IGI Investigator S. Burris, at Pelican

14  Bay, in July 2011 who approved them.

15       Plaintiff had two cases pending: (1) *Harrison v. S. Burris*, Case No. 13-2506-JST, which

16  was dismissed on March 31, 2015; and (2) *Harrison v. D. Milligan*, Case No. 14-15022.  Each case

17  passed screening and was at the summary judgment stage, but each was dismissed.  Plaintiff was

18  without his legal exhibits to prove Plaintiff's claims. Plaintiff alleges in Claim I, that defendants

19  obstructed and interfered with Plaintiff's access to the courts.

20       In claim II, Plaintiff alleges a violation of his First Amendment right to free speech,

21  expression and association.  Plaintiff alleges Defendants S. Niehus, J. Pierce, R. Broomfield, M.

22  Sexton and J. Vanderpoel violated his First Amendment rights by confiscating Plaintiff's political

23  writing, pamphlets, manuscripts, reference notes, newspaper clippings, etc. All of Plaintiff's

24  exhibits were confiscated by the IGI gang unit.  The memo dated May 4, 2015 showed that R.

25  Broomfield and J. Pierce were directly involved in the confiscation of Plaintiff's property.  The

26  memo dated March 26, 2015 showed that J. Vanderpoel was directly involved in the confiscation

27  of Plaintiff's property.  The memo dated June 30, 2015 showed that M. Sexton was directly

28  involved in the confiscation of Plaintiff's property.  Defendant M. Sexton and J. Vanderpoel

3

enacted policies enabling Plaintiff's First Amendment rights to be violated. Plaintiff was told, falsely, that his legal materials were confiscated because they were gang related contraband.

Plaintiff received an itemized list of his confiscated items, including the following: (1) newspaper clippings; (2) postcard image of George Lester Jackson; (3) 23 page document entitled, "Resisting the Subversive Extremes of Political Persecution"; (4) 21 page political dictionary; (5) 3 page political writing entitled, "Thoughts on the Historical Materialism of the Prison Movement"; (6) 8 page political writing about the anatomy; (7) 24 pages dealing with the W.L. Nolen Mentorship program; (8) 47 page manuscript entitled, "Manifesto of Political Disorder"; (9) 41 photocopied images of George Jackson Lives; (10) 10 pages of handwritten reference notes; (11) 14 photocopied pages of newspaper clippings; (12) 3 page document discussing New Afrikan Revolutionary Nationalism; (13) 2 page document of martial art movements; (14) copies of a pamphlet entitled, "George Jackson Lives." These items were not contraband, as defendants have alleged and are Plaintiff's political writings. None of the exhibits threatened prison security. In fact, another IGI Officer, S. Burris at Pelican Bay State Prison, cleared these exact documents as not contraband in 2011.

Plaintiff asserts a claim for violation of his right to access the courts, and a violation of his rights to freedom of speech, expression, and association under the First Amendment. Plaintiff seeks compensatory and punitive damages, declaratory relief, the return of his confiscated property, the appointment of counsel, and any other relief deemed just and appropriate.

**III.    Discussion**

**A. Supervisory Liability**

Supervisory personnel may not be held liable under section 1983 for the actions of subordinate employees based on respondeat superior, or vicarious liability. *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013); *accord Lemire v. California Dep't of Corr. and Rehab*., 726 F.3d 1062, 1074-75 (9th Cir. 2013); *Lacey v. Maricopa County*, 693 F.3d 896, 915-16 (9th Cir. 2012) (*en banc*). "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Crowley*, 734 F.3d at 977 (citing *Snow v.*

*McDaniel*, 681 F.3d 978, 989 (9th Cir. 2012)) (internal quotation marks omitted); *accord Lemire*, 726 F.3d at 1074-75; *Lacey*, 693 F.3d at 915-16. "Under the latter theory, supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation." *Crowley*, 734 F.3d at 977 (citing *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)) (internal quotation marks omitted).

Plaintiff has not adequately alleged that Chief Deputy Warden Sexton or Associate Warden Vanderpoel were personally involved in a violation of his rights. In a conclusory fashion, Plaintiff alleges that Sexton and Vanderpoel memo shows they were "directly involved" in the confiscation. But Plaintiff does not summarize the memo that these defendants "were directly involved" or attach the memos.

Nor has Plaintiff adequately alleged the challenged policy. Plaintiff has alleged in conclusory fashion that a policy was adopted which violated Plaintiff's First Amendment rights. Plaintiff alleges that Sexton and Vanderpoel "had enacted the policies enabling plaintiff First Amendment Constitutional right to free speech, expression and association to be violated." (ECF No. 10 p. 16 of 26.) Plaintiff appears to be challenging the "contraband policy," but it is unclear what that policy is. Supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation." Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir. 2013) (citation and internal quotation marks omitted.) Causation is essential to policy claim, as Plaintiff is asserting here against these defendants. See Crowley v. Bannister, 734 F.3d at 977, (citing OSU Student Alliance v. Ray, 699 F.3d 1053, 1076 (9th Cir.2012), cert. denied, No. 12–1296, 2013 WL 1808554 (Oct. 7, 2013)). Plaintiff cites generally to Title 15, CCR §3380 which provides the Warden is responsible for the custody and care of inmates. But Plaintiff cannot bring any claim based solely on a prison official's supervisory role.

**B. Access to the Courts**

Plaintiff has a constitutional right of access to the courts, and prison officials may not

actively interfere with his right to litigate. *Silva v. Di Vittorio*, 658 F.3d 1090, 1101-02 (9th Cir. 2001) overruled on other grounds as stated by *Richey v. Dahne*, 807 F.3d 1202, 1209 n.6 (9th Cir. 2015). The right of access to the courts, however, is limited to non-frivolous direct criminal appeals, habeas corpus proceedings, and § 1983 actions. *Lewis v. Casey*, 518 U.S. 343, 354–55 (1996).

In order to frame a claim of a denial of the right to access the courts, a prisoner must allege facts showing that he has suffered "actual injury," a jurisdictional requirement derived from the standing doctrine. *Lewis*, 518 U.S. at 349. An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Lewis*, 518 U.S. at 348 (citation and internal quotations omitted); *see also Alvarez v. Hill*, 518 F.3d 1152, 1155 n. 1 (9th Cir. 2008) (noting that "[f]ailure to show that a 'non-frivolous legal claim had been frustrated' is fatal" to a claim for denial of access to legal materials) (quoting *Lewis*, 518 U.S. at 353 & 353 n. 4).

A prisoner must allege the denial of the necessary tools to litigate a non-frivolous claim attacking a conviction, sentence, or conditions of confinement. *Christopher*, 536 U.S. at 415; *Lewis*, 518 U.S. at 353 & n.3. Plaintiff need not show that he would have been successful on the merits of his claims, but only that they were not frivolous. *Allen v. Sakai*, 48 F.3d 1082, 1085 & n.12 (9th Cir. 1994). A claim "is frivolous where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). To properly plead a denial of access to the courts claim, "the complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued, and a like plain statement should describe any remedy available under the access claim and presently unique to it." *Christopher*, 536 U.S. at 417-18 (footnote omitted).

Claims for denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a meritorious suit that cannot now be tried (backward-looking claim). *Christopher v. Harbury*, 536 U.S. 403, 412-15 (2002). For backward-looking claims, plaintiff "must show: 1) the loss of a 'nonfrivolous' or 'arguable' underlying claim; 2) the official acts frustrating the litigation; and 3) a

6

1    remedy that may be awarded as recompense but that is not otherwise available in a future suit."

2    *Phillips v. Hust*, 477 F.3d 1070, 1076 (9th Cir. 2007) (citing *Christopher*, 536 U.S. at 413-14).

3       In this case, Plaintiff has not met the standards set forth above. Plaintiff failed to allege

4    sufficient facts to support that the disposal of his legal exhibits constitutes a denial of meaningful

5    access to the courts.  Plaintiff alleges that both cases where past the screening stage and were at

6    summary judgment, arguably satisfying the requirement that the claims were non-frivolous.  While

7    Plaintiff alleges two cases where dismissed after his "legal exhibits" were confiscated, the Court

8    must determine whether Plaintiff has stated a plausible claim.  The "legal exhibits" confiscated

9    described above are not the type of exhibits typically necessary to pursue civil litigation.  Plaintiff

10    does not allege what the claims were in each of the two cases and how these legal exhibits were

11    related and necessary to his claims in the two cases.  Phillips v. Hust, 477 F.3d 1070, 1076 (9th Cir.

12    2007) (backward-looking denial of access claim must show loss of a non-frivolous claim, official

13    acts frustrating the litigation, and a remedy that may be awarded which is not available in a future

14    suit).  Plaintiff will be granted leave to amend this claim.

15       **C. Speech, Expression, and Association**

16       The First Amendment to the United States Constitution, which is applicable to the states

17    through the Fourteenth Amendment, provides: "Congress shall make no law respecting an

18    establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of

19    speech, . . . or the right of the people peaceably to assemble, and to petition the Government for a

20    redress of grievances." U.S. Const. amend. I; *see Everson v. Board of Education*, 330 U.S. 1, 15

21    (1947). Prisoners "clearly retain protections afforded by the First Amendment...." *O'Lone v. Estate*

22    *of Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted), *superseded by statute on other grounds*,

23    42 U.S.C. §§ 2000cc, *et seq*.

24       As a consequence of incarceration, however, a prisoner's First Amendment rights are

25    necessarily "more limited in scope than the constitutional rights held by individuals in society at

26    large." *Shaw v. Murphy*, 532 U.S. 223, 229 (2001). Thus, an inmate retains only "those First

27    Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate

28    penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974)

("[L]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.") (citations and internal quotation marks omitted); *Bell v. Wolfish*, 441 U.S. 520, 545 (1979); *Prison Legal News v. Cook*, 238 F.3d 1145, 1149 (9th Cir. 2001).

Prisoners specifically retain limited First Amendment rights to free expression and association. *See Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989); *Shaw*, 532 U.S. at 229. Regulations limiting prisoners' access to publications or other information are valid if they are reasonably related to legitimate penological interests. Id. A prison official's limitation on inmate expression/assembly does not violate the First Amendment if the particular restriction "is reasonably related to legitimate penological interests" and "operated in a neutral fashion" (*i.e.*, was applied "without regard to the content of the expression"), and the inmate was not deprived of all means of expression. *Turner*, 482 U.S. at 89 (citations omitted); *Valdez v. Rosenbaum*, 302 F.3d 1039, 1048 (9th Cir. 2002) (citations omitted), *cert. denied*, 538 U.S. 1047 (2003).

*Turner v. Safely*, 482 U.S. 78 (1987), sets forth the general test to determine whether a prison regulation that infringes on constitutional rights may be enforced. "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. Four factors are to be considered when determining the reasonableness of a prison rule: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate government interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates and on the allocation of prison resources generally"; and (4) the "absence of ready alternatives," or, in other words, whether the rule at issue is an "exaggerated response to prison concerns." *Id*. at 89-90. See *Overton v. Bazzetta*, 539 U.S. 126, 131–32, 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003) (applying *Turner v. Safely*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)).

Plaintiff has not met all of the standards set forth here. Plaintiff arguably has adequately alleged the lack of a legitimate penological interest because another institution approved the same

8

alleged contraband. As stated above, Plaintiff has not pleaded what the contraband policy is or the facts to support the remaining factors in *Turner v. Safely*. A plaintiff/inmate has the burden to show that a government restriction on expression/assembly is not reasonable. *See Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) (citations omitted).

### D. Declaratory Relief

In addition to damages, Plaintiff seeks declaratory relief, but because his claims for damages necessarily entail a determination whether his rights were violated, his separate request for declaratory relief is subsumed by those claims. *Rhodes v. Robinson*, 408 F.3d 559, 566 n. 8 (9th Cir. 2005). Therefore, Plaintiff's claim for declaratory relief should be dismissed.

### E. Property

Plaintiff appears to seek to assert a claim based on the deprivation of personal property. Plaintiff has no cause of action under 42 U.S.C. § 1983 for an unauthorized deprivation of his personal property, whether intentional or negligent, by a state employee, since a meaningful state post-deprivation remedy for the loss is available. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). California law provides an adequate post-deprivation remedy for any property deprivations. *Barnett v. Centoni*, 31 F.3d 813, 816-817 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810-895).

### F. Appointment of Counsel

Plaintiff does not have a constitutional right to appointed counsel in this action, *Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir. 1997), *rev'd in part on other grounds*, 154 F.3d 952, 954 n.1 (9th Cir. 1998), and the Court cannot require an attorney to represent Plaintiff pursuant to 28 U.S.C. §1915(e)(1), *Mallard v. U.S. Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296, 298 (1989). However, in certain exceptional circumstances the court may request the voluntary assistance of counsel pursuant to section 1915(e)(1). *Rand*, 113 F.3d at 1525. Without a reasonable method of securing and compensating counsel, the court will seek volunteer counsel only in the most serious and exceptional cases. In determining whether "exceptional circumstances exist, a district court must evaluate both the likelihood of success on the merits [and] the ability of the [plaintiff] to articulate his claims pro se in light of the complexity of the legal issues involved." *Id*. (internal quotation marks and citations omitted).

1        In this case, the Court does not find the required exceptional circumstances for the

2 appointment of counsel. Even if it is assumed that Plaintiff is not well versed in the law and that he

3 has made serious allegations which, if proved, would entitle him to relief, his case is not

4 exceptional. The Court is faced with similar cases filed by pro se litigants almost daily.

5 Furthermore, at this stage in the proceedings, the Court cannot make a determination that Plaintiff

6 is likely to succeed on the merits. As discussed in this order, the Court has not yet found that

7 Plaintiff proceeds upon a cognizable claim.

8        For these reasons, Plaintiff's request for the appointment of counsel will be denied, without

9 prejudice.

10       **IV.**     **Conclusion**

11        As discussed above, the Court finds deficiencies in Plaintiff's complaint and that he has not

12 stated a cognizable claim for relief. Plaintiff will be granted **one final opportunity** to amend to

13 attempt to cure the identified deficiencies, to the extent he is able to do so in good faith. *Lopez v.*

14 *Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

15        Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what

16 each named defendant did that led to the deprivation of Plaintiff's constitutional rights, *Iqbal*, 556

17 U.S. at 678-79, 129 S. Ct. at 1948-49. Although accepted as true, the "[f]actual allegations must

18 be [sufficient] to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555

19 (citations omitted).

20        Additionally, Plaintiff may not change the nature of this suit by adding new, unrelated

21 claims in his first amended complaint. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no

22 "buckshot" complaints).

23        Finally, Plaintiff is advised that an amended complaint supersedes the original complaint.

24 *Lacey v. Maricopa Cty.*, 693 F.3d 896, 927 (9th Cir. 2012). Therefore, Plaintiff's amended

25 complaint must be "complete in itself without reference to the prior or superseded pleading." Local

26 Rule 220.

27        Based on the foregoing, it is HEREBY ORDERED that:

28       1.     Plaintiff's request for the appointment of counsel is denied, without prejudice;

2. The Clerk's Office shall send Plaintiff a complaint form;

3. Within **thirty (30) days** from the date of service of this order, Plaintiff shall file an amended complaint curing the deficiencies identified by the Court in this order, or file a notice of voluntary dismissal;

4. Plaintiff's amended complaint is limited to twenty-five (25) pages, excluding exhibits; and

5. If Plaintiff fails to file an amended complaint in compliance with this order, the Court will recommend dismissal of this action, with prejudice, consistent with the reasons discussed in this order.

IT IS SO ORDERED.

Dated: __**April 2, 2019**__          /s/ *Barbara A. McAuliffe* _
                                      UNITED STATES MAGISTRATE JUDGE