1

2

3

4

5

6

7

8                        **UNITED STATES DISTRICT COURT**

9                        **EASTERN DISTRICT OF CALIFORNIA**

10

11   MARCUS HARRISON,                    )   Case No.: 1:17-cv-01120-LJO-BAM (PC)
                                         )
12                Plaintiff,             )   ORDER DENYING, WITHOUT PREJUDICE,
                                         )   PLAINTIFF'S REQUEST FOR APPOINTMENT
13          v.                           )   OF COUNSEL
                                         )
14   NIEHUS, et al.,                     )   FINDINGS AND RECOMMENDATION
                                         )   REGARDING DISMISSAL OF ACTION FOR
15                Defendants.            )   FAILURE TO STATE A CLAIM
                                         )
16                                       )   (ECF No. 12)
                                         )
17   _____)   **FOURTEEN (14) DAY DEADLINE**

18          Plaintiff Marcus Harrison is a state prisoner proceeding *pro se* in this civil rights action

19   pursuant to 42 U.S.C. § 1983.  On April 2, 2018, the Court screened Plaintiff's complaint and granted

20   Plaintiff leave to file a first amended complaint.  (ECF No. 9.)  On April 2, 2019, the Court screened

21   Plaintiff's first amended complaint and granted Plaintiff leave to file a second amended complaint.

22   (ECF No. 11.)

23          Plaintiff's second amended complaint, filed on May 2, 2019, is currently before the Court for

24   screening.  (ECF No. 12.)

25   I.     <u>Screening Requirement and Standard</u>

26          The Court is required to screen complaints brought by prisoners seeking relief against a

27   governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C.

28   § 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or

                                          1

malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b); see also 28 U.S.C. § 1915(e)(2)(B).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights.  Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding *pro se* in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor.  Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012).  To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged.  Iqbal, 556 U.S. at 678–79; Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).  The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard.  Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## II.    Summary of Plaintiff's Allegations

Plaintiff is currently housed at California Medical Facility.  Plaintiff alleges that the events at issue in this action took place at California State Prison, Corcoran ("Corcoran").  Plaintiff names the following defendants, each of whom is employed at Corcoran: (1) Institutional Gang Investigator S. Niehus; (2) Institutional Gang Investigator J. Pierce; (3) Investigative Service Unit R. Broomfield; (4) Chief Deputy Warden M. Sexton; and (5) Associate Warden J. Vanderpoel.

Plaintiff alleges as follows:  On February 3, 2015, Plaintiff arrived at Corcoran's Security Housing Unit ("SHU") via a transfer from Pelican Bay State Prison's SHU.  On March 11, 2015, Corcoran SHU Property Room Officer G. Robles issued Plaintiff his personal legal property.  Upon inspection of his personal legal property, Plaintiff informed Officer Robles that several "legal

document materials" were missing. Officer Robles then informed Plaintiff that Corcoran's Institutional Gang Investigation Unit ("IGI Unit") had searched Plaintiff's property and confiscated materials. Plaintiff was issued a property removal receipt dated February 18, 2015 that was signed by Defendant Niehus and which listed all of the items confiscated by Corcoran's IGI Unit.

On March 15, 2015, Plaintiff sent a CDCR Form 22, dated March 15, 2015, to Corcoran's IGI Unit, addressed to Defendant Niehus, wherein Plaintiff inquired about the confiscation of his political writings, pamphlets, reference notes, newspaper clippings, etc. On March 17, 2015, Defendant Niehus responded to Plaintiff's CDCR 22 form by saying, "On February 18, 2015, Corcoran I.G.I. Unit searched your property located in 4B SHU Property Room. Refer to attached property receipt. On February 18, 2015, a copy of the attached search receipt was forwarded to you via institutional mail. All items confiscated will be documented @ a future date." (ECF No. 12, at 8-9, 33.)[1]

Plaintiff asserts that, as indicated by Officer Robles and Defendant Niehus, all of Corcoran's IGI unit staff members were complicit in confiscating Plaintiff's "legal exhibits." Plaintiff further asserts that the Defendants in this case have caused, created, authorized, condoned, and knowingly approved of Plaintiff's access to the court being obstructed and interfered with and of Plaintiff's First Amendment rights being violated, when they relied on California Code of Regulations, title 15, §§ 3006(a) and (c), 3191(c), and 3378.2 when confiscating Plaintiff's materials and when investigating the confiscation after it was brought to their attention. Specifically, in the May 4, 2015 First Level Response to Plaintiff's administrative appeal, Log No. CSPC-8-15-02088, Defendants Pierce and Broomfield stated that the materials confiscated from Plaintiff were still being held pending an investigation pursuant to California Code of Regulations, title 15, §§ 3006(a) and (c), 3191(c), and 3378.2. (Id. at 10, 38-39.)

With regards to Defendant Vanderpoel, in the March 26, 2015 First Level Response to Plaintiff's administrative appeal, Log No. CSPC-6-15-01075, Defendant Vanderpoel stated that Corcoran was not responsible for Plaintiff not meeting his legal deadline in the *Harrison v. Burris* case because Plaintiff only arrived at Corcoran three days prior to the alleged due date and Plaintiff failed

---

[1] References herein to page numbers are to the page numbers in the Court's ECF pagination headers.

to submit any documentation to support his allegation of a legal deadline.  (Id. at 10, 41-42.)

However, Plaintiff asserts that, on February 3, 2015, he personally handed Corcoran SHU law library

Officer Beam documentation of his February 6, 2015 legal deadline.  (Id. at 10-11, 27.)  Further, with

regards to Defendant Sexton, in the June 30, 2015 Second Level Response to Plaintiff's administrative

appeal, Log No. CSPC-8-15-02088, Defendant Sexton stated that, after reviewing the February 18,

2015 property receipt, it has been determined that Plaintiff will receive an itemized list of the items

removed from Plaintiff's property.  (Id. at 11, 40.)  Plaintiff alleges that these facts establish that "the

aforementioned Defendants" have violated his constitutional right to access the court and his First

Amendment right to free speech, expression, and association in their supervisory role.  (Id. at 11, 15.)

Plaintiff alleges that the confiscation of his legal property did not advance any penological

interests of the prison because the same property was previously reviewed by CDCR IGI Investigator

S. Burris at Pelican Bay State Prison in July 2011 and, subsequently, the legal property was issued to

Plaintiff.  (Id. at 11, 44-45.)

Plaintiff had two cases pending: (1) *Harrison v. S. Burris*, Case No. 13-cv-2506-JST (PR)

(N.D. Cal.), which was dismissed on March 31, 2015; and (2) *Harrison v. D. Milligan*, Ninth Circuit

Case No. 14-15022, which, on May 19, 2015, affirmed the district court's entry of summary judgment

against Plaintiff.  (Id. at 29, 35-36.)  Plaintiff asserts that the legal property that was confiscated was in

the form of pamphlets, political articles, newspaper articles, manuscripts, and reference study notes

that he was using as legal exhibits in his active legal cases.  Plaintiff states that the confiscated legal

property constituted factual evidence that "George Jackson; New Afrikan Revolutionary Nationalism

(N.A.R.N.); Black August, etc." was not prison gang-related materials, which is a topic that Plaintiff's

active legal cases specifically dealt with.

 Plaintiff received an itemized list of his confiscated items, including the following: (1) 1

postcard image of George Lester Jackson; (2) a 23-page document entitled, "Resisting the Subversive

Extremes of Political Persecution"; (3) a 21-page political dictionary; (4) a 3-page political writing

entitled, "Thoughts on the Historical Materialism of the Prison Movement"; (5) 8-page political

writing about the anatomy; (6) 24 pages dealing with the W.L. Nolen Mentorship program; (7) a 47-

page manuscript entitled, "Manifesto of Political Disorder"; (8) 41 photocopied images of George

Jackson Lives; (9) 11 pages of handwritten reference notes; (10) 14 photocopied pages of newspaper clippings; (11) a 3-page document discussing New Afrikan Revolutionary Nationalism and the NCTT; (12) a 2-page document of martial art movements; and (13) four copies of a pamphlet entitled, "George Jackson Lives." Plaintiff alleges that these items were not "BGF [Black Guerrilla Family] contraband" as the Defendants in this case have alleged. None of the exhibits threatened prison security. In fact, as stated above, another IGI Officer, S. Burris at Pelican Bay State Prison, cleared these "same documents" as not contraband in 2011.

Plaintiff alleges that, due to the confiscation of his legal exhibits/property, he was prevented from litigating his two legal cases to conclusion and, thus, he had two meritorious legal cases dismissed.

In Claim I, Plaintiff alleges that Defendants obstructed and interfered with Plaintiff's access to the courts. In Claim II, Plaintiff alleges a violation of his First Amendment right to free speech, expression and association.

Plaintiff seeks compensatory and punitive damages, declaratory relief, the return of his confiscated property, the appointment of counsel, and any other relief deemed just and appropriate.

**III.** **Discussion**

    **A.** **Supervisory Liability**

Supervisory personnel may not be held liable under section 1983 for the actions of subordinate employees based on respondeat superior, or vicarious liability. Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir. 2013); accord Lemire v. California Dep't of Corr. and Rehab., 726 F.3d 1062, 1074-75 (9th Cir. 2013); Lacey v. Maricopa County, 693 F.3d 896, 915-16 (9th Cir. 2012) (en banc). "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Crowley, 734 F.3d at 977 (citing Snow v. McDaniel, 681 F.3d 978, 989 (9th Cir. 2012)) (internal quotation marks omitted); accord Lemire, 726 F.3d at 1074-75; Lacey, 693 F.3d at 915-16. "Under the latter theory, supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation."

///

5

Crowley, 734 F.3d at 977 (citing Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989)) (internal quotation marks omitted).

Plaintiff alleges that Chief Deputy Warden Sexton and Associate Warden Vanderpoel were personally involved in a violation of his constitutional rights because both Defendants reviewed and denied the inmate grievances that Plaintiff submitted to challenge the confiscation of his personal property and his contention that his access to the court was being obstructed. However, the Court declines to decide if Defendants Sexton's and Vanderpoel's responses to Plaintiff's inmate grievances establish that each of the Defendants was personally involved in Plaintiff's constitutional deprivation because, as discussed below, Plaintiff has failed to allege a cognizable claim that he has suffered a constitutional deprivation. Therefore, Plaintiff has failed to allege a cognizable supervisory liability claim against Defendants Sexton and Vanderpoel.

## B.    Access to the Courts

Plaintiff has a constitutional right of access to the courts, and prison officials may not actively interfere with his right to litigate. Silva v. Di Vittorio, 658 F.3d 1090, 1101-02 (9th Cir. 2001), overruled on other grounds as stated by Richey v. Dahne, 807 F.3d 1202, 1209 n.6 (9th Cir. 2015). The right of access to the courts, however, is limited to non-frivolous direct criminal appeals, habeas corpus proceedings, and § 1983 actions. Lewis v. Casey, 518 U.S. 343, 354–55 (1996).

In order to frame a claim of a denial of the right to access the courts, a prisoner must allege facts showing that he has suffered "actual injury," a jurisdictional requirement derived from the standing doctrine. Lewis, 518 U.S. at 349. An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." Lewis, 518 U.S. at 348 (citation and internal quotations omitted); see also Alvarez v. Hill, 518 F.3d 1152, 1155 n. 1 (9th Cir. 2008) (noting that "[f]ailure to show that a 'non-frivolous legal claim had been frustrated' is fatal" to a claim for denial of access to legal materials) (quoting Lewis, 518 U.S. at 353 & 353 n. 4).

A prisoner must allege the denial of the necessary tools to litigate a non-frivolous claim attacking a conviction, sentence, or conditions of confinement. Christopher v. Harbury, 536 U.S. 403, 415 (2002); Lewis, 518 U.S. at 353 & n.3. Plaintiff need not show that he would have been successful

on the merits of his claims, but only that they were not frivolous.  <u>Allen v. Sakai</u>, 48 F.3d 1082, 1085 & n.12 (9th Cir. 1994).  A claim "is frivolous where it lacks an arguable basis either in law or in fact." <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989).  To properly plead a denial of access to the courts claim, "the complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued, and a like plain statement should describe any remedy available under the access claim and presently unique to it."  <u>Christopher</u>, 536 U.S. at 417-18 (footnote omitted).

Claims for denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a meritorious suit that cannot now be tried (backward-looking claim).  <u>Christopher</u>, 536 U.S. at 412-15. For backward-looking claims, plaintiff "must show: 1) the loss of a 'nonfrivolous' or 'arguable' underlying claim; 2) the official acts frustrating the litigation; and 3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit."  <u>Phillips v. Hust</u>, 477 F.3d 1070, 1076 (9th Cir. 2007) (citing <u>Christopher</u>, 536 U.S. at 413-14).

In this case, Plaintiff has not met the standards set forth above.  Plaintiff has failed to allege sufficient facts to support that the confiscation of his "legal exhibits" constitutes a denial of meaningful access to the courts.  Since Plaintiff has provided this Court with the Clerk's Judgment in *Harrison v. Burris*, which demonstrates that the case was dismissed after the District Judge in that case issued an order granting Defendants' motion to dismiss, and the U.S. Court of Appeals for the Ninth Circuit's memorandum opinion in *Harrison v. Milligan*, affirming the district court's entry of summary judgment against Plaintiff, Plaintiff has arguably demonstrated that his claims in those cases were non-frivolous.  (ECF No. 12, at 29, 35-36.)  However, Plaintiff has not sufficiently pled that the confiscation of his "legal exhibits" caused Plaintiff to lose a meritorious suit that cannot now be tried. The confiscated "legal exhibits" described above are not the type of exhibits typically necessary to pursue civil litigation.  Plaintiff has not alleged the underlying claims in each of the two cases in accordance with Federal Rule of Civil Procedure Rule 8(a) and alleged facts demonstrating how the confiscated "legal exhibits" were related and necessary to his claims in the two cases.  <u>Phillips</u>, 477 F.3d at 1076 (backward-looking denial of access claim must show loss of a non-frivolous claim,

7

1  official acts frustrating the litigation, and a remedy that may be awarded which is not available in a

2  future suit).  Therefore, Plaintiff has failed to state a cognizable claim for a violation of his

3  constitutional right of access to the courts.

4  **C.      Speech, Expression, and Association**

5          The First Amendment to the United States Constitution, which is applicable to the states

6  through the Fourteenth Amendment, provides: "Congress shall make no law respecting an

7  establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, .

8  . . or the right of the people peaceably to assemble, and to petition the Government for a redress of

9  grievances."  U.S. Const. amend. I; <u>see</u> <u>Everson v. Board of Education</u>, 330 U.S. 1, 15 (1947).

10  Prisoners "clearly retain protections afforded by the First Amendment...."  <u>O'Lone v. Estate of</u>

11  <u>Shabazz</u>, 482 U.S. 342, 348 (1987) (citations omitted), <u>superseded by statute on other grounds</u>, 42

12  U.S.C. §§ 2000cc, *et seq*.

13          As a consequence of incarceration, however, a prisoner's First Amendment rights are

14  necessarily "more limited in scope than the constitutional rights held by individuals in society at

15  large."  <u>Shaw v. Murphy</u>, 532 U.S. 223, 229 (2001).  Thus, an inmate retains only "those First

16  Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate

17  penological objectives of the corrections system."  <u>Pell v. Procunier</u>, 417 U.S. 817, 822 (1974)

18  ("[L]awful incarceration brings about the necessary withdrawal or limitation of many privileges and

19  rights, a retraction justified by the considerations underlying our penal system.") (citations and internal

20  quotation marks omitted); <u>see</u> <u>Bell v. Wolfish</u>, 441 U.S. 520, 545 (1979); <u>Prison Legal News v. Cook</u>,

21  238 F.3d 1145, 1149 (9th Cir. 2001).

22          Prisoners specifically retain limited First Amendment rights to free expression and association.

23  <u>See</u> <u>Thornburgh v. Abbott</u>, 490 U.S. 401, 407 (1989); <u>Shaw</u>, 532 U.S. at 229.  Regulations limiting

24  prisoners' access to publications or other information are valid if they are reasonably related to

25  legitimate penological interests.  <u>Id</u>.  A prison official's limitation on inmate expression/assembly does

26  not violate the First Amendment if the particular restriction "is reasonably related to legitimate

27  penological interests" and "operated in a neutral fashion" (*i.e.*, was applied "without regard to the

28  content of the expression"), and the inmate was not deprived of all means of expression.  <u>Turner v.</u>

8

Safley, 482 U.S. 78, 89 (1987) (citations omitted); Valdez v. Rosenbaum, 302 F.3d 1039, 1048 (9th Cir. 2002) (citations omitted), cert. denied, 538 U.S. 1047 (2003).

Turner sets forth the general test to determine whether a prison regulation that infringes on constitutional rights may be enforced. "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Turner, 482 U.S. at 89. Four factors are to be considered when determining the reasonableness of a prison rule: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate government interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates and on the allocation of prison resources generally"; and (4) the "absence of ready alternatives," or, in other words, whether the rule at issue is an "exaggerated response to prison concerns." Id. at 89-90. See Overton v. Bazzetta, 539 U.S. 126, 131–32, (2003) (applying Turner, 482 U.S. at 89).

Plaintiff has not met all of the standards set forth here. Initially, Plaintiff has alleged that the Defendants in this case violated his First Amendment rights when they relied on California Code of Regulations, title 15, §§ 3006(a) and (c), 3191(c), and 3378.2 to confiscate Plaintiff's "legal exhibits" and when investigating the confiscation after it was brought to their attention. Further, Plaintiff arguably has adequately alleged the lack of a legitimate penological interest because he has pled that another institution approved the same alleged contraband. However, Plaintiff has not pled any facts demonstrating that California Code of Regulations, title 15, §§ 3006(a) and (c), 3191(c), and/or 3378.2 are not rationally related to a legitimate and neutral government objective, that he has no alternative avenues to exercise his First Amendment right, and that there are easy and obvious alternatives that indicate that the regulations are an exaggerated response by prison officials. A plaintiff/inmate has the burden to allege that a government restriction on expression/assembly is not reasonable. See Overton, 539 U.S. at 132 (citations omitted). Therefore, Plaintiff has failed to state a cognizable claim for a violation of his First Amendment right of free speech, expression, and association.

///

///

9

**D.     Declaratory Relief**

In addition to damages, Plaintiff seeks declaratory relief, but because his claims for damages necessarily entail a determination whether his rights were violated, his separate request for declaratory relief is subsumed by those claims. Rhodes v. Robinson, 408 F.3d 559, 566 n. 8 (9th Cir. 2005). Therefore, Plaintiff's claim for declaratory relief should be dismissed.

**E.     Property**

Plaintiff appears to seek to assert a claim based on the deprivation of personal property. Plaintiff has no cause of action under 42 U.S.C. § 1983 for an unauthorized deprivation of his personal property, whether intentional or negligent, by a state employee, since a meaningful state post-deprivation remedy for the loss is available. Hudson v. Palmer, 468 U.S. 517, 533 (1984). California law provides an adequate post-deprivation remedy for any property deprivations. Barnett v. Centoni, 31 F.3d 813, 816-817 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810-895).

**F.     Appointment of Counsel**

The Court notes that Plaintiff does not have a constitutional right to appointed counsel in this action, Rand v. Rowland, 113 F.3d 1520, 1525 (9th Cir. 1997), and the Court cannot require any attorney to represent Plaintiff pursuant to 28 U.S.C. § 1915(e)(1), Mallard v. United States District Court for the Southern District of Iowa, 490 U.S. 296, 298 (1989). Nevertheless, in certain exceptional circumstances, the Court may request the voluntary assistance of counsel pursuant to § 1915(e)(1). Rand, 113 F.3d at 1525. Without a reasonable method of securing and compensating counsel, the Court will seek volunteer counsel only in the most serious and exceptional cases. In determining whether "exceptional circumstances exist, the district court must evaluate both the likelihood of success on the merits [and] the ability of the [plaintiff] to articulate his claims pro se in light of the complexity of the legal issues involved." Id. (internal quotation marks and citations omitted). "Neither of these considerations is dispositive and instead must be viewed together." Palmer v. Valdez, 560 F.3d 965, 970 (9th Cir. 2009). The burden of demonstrating exceptional circumstances is on Plaintiff. Id.

The Court has considered Plaintiff's request, but does not find the required exceptional circumstances. Initially, circumstances common to most prisoners, such as lack of legal education,

limited law library access, and lack of funds to hire counsel, do not alone establish the exceptional circumstances that would warrant appointment of counsel. Further, at this stage in the proceedings, the Court cannot make a determination that Plaintiff is likely to succeed on the merits. As discussed in this order, the Court is recommending that this action be dismissed because Plaintiff has failed to state any cognizable claims. Finally, based on a review of the record in this case, the legal issues involved in this case do not appear to be particularly complex and the Court finds that Plaintiff can adequately articulate his claims.

For these reasons, Plaintiff's request for the appointment of counsel will be denied, without prejudice.

**IV.**     <u>**Conclusion, Order, and Recommendation**</u>

For the reasons stated, Plaintiff's second amended complaint fails to state a cognizable claim for relief. Despite being provided with the relevant pleading and legal standards, Plaintiff has been unable to cure the identified deficiencies and further leave to amend is not warranted. <u>Lopez v. Smith</u>, 203 F.3d 1122, 1130 (9th Cir. 2000).

Accordingly, the Court HEREBY DENIES, without prejudice, Plaintiff's request for appointment of counsel.

Furthermore, IT IS HEREBY RECOMMENDED that this action be dismissed, with prejudice, for failure to state a cognizable claim upon which relief may be granted.

///
///
///
///
///
///
///
///
///
///

These Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendation, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.  <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   __September 9, 2019__            _____ /s/ *Barbara A. McAuliffe* _____

UNITED STATES MAGISTRATE JUDGE